DECISION
This case comes before the Court on appeal from a decision of the R.I. Ethics Commission ("commission"). The commission fined Matthew Lewiss ("Lewiss" or "appellant"), a lawyer and former Clerk of the Misquamicut Fire District, $15,000 for violating G.L. §§ 36-14-5(a), 5(b), 5(f), 36-14-6 and regulation § 36-14-5002(3) by failing to recuse himself from various Fire District meetings at which matters involving a contract between Maurice J. Murphy ("Murphy"), a former client of Lewiss, and the Misquamicut Fire District were discussed. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
On January 28, 1992, the commission received a complaint from Stephen Hayes ("Hayes"), charging Matthew Lewiss, a member of the Rhode Island Bar, with multiple violations of the Rhode Island Code of Ethics resulting from his participation as a Clerk of the Misquamicut Fire District. The complaint alleged that Lewiss had failed to recuse himself from meetings involving negotiations in which a client stood to benefit financially through a contract with the Fire District. Lewiss maintains that he inquired as to the potential conflict during a meeting on December 12, 1990, at which time, John Toscano, the solicitor of the Fire District, allegedly stated to Lewiss that he would be able to participate and vote in the matters concerning Murphy's business interests. (Tr. at 3). Lewiss stated that he sought further advice on the potential conflict from Mark Eckstein, then Executive Director of the Ethics Commission. Lewiss contends that Eckstein advised him that he would be able to participate and vote in matters concerning the Murphy contract.[1] However, testimony also reveals that Eckstein warned that such advice did not reflect the official position of the commission, absent an official advisory opinion. (Tr. at 4).
The allegations related to Lewiss' relationship with Maurice J. Murphy, an individual who owned and operated M.J. Rubbish Removal Inc., a Rhode Island company. The complaint alleged that Lewiss, acting as Murphy's attorney, had substantial conflicts with his official responsibilities as Clerk of the Misquamicut Fire District. The complaint specifically alleges that while Lewiss was Murphy's attorney, he improperly participated and influenced the negotiations and awarding of the 1991 renewal of the Fire District's contract with Murphy's company.
Upon receipt of Hayes's January 28, 1992 complaint, the commission sent notice to Lewiss who, in turn, denied the allegations in an answer dated February 10, 1992. The commission then, pursuant to § 36-14-2, subsequently commenced an investigation in order to determine the merits of Hayes's complaint.
On June 9, 1992, the commission filed its investigative report. On July 3, 1992, the commission notified Lewiss concerning both the scheduling of a probable cause hearing and his right to appear and contest the charges against him. On October 27, 1992, a hearing was held pursuant to § 36-14-12(c)(4). Although acting outside the 180 day time limit, the commission did not seek a sixty day extension pursuant to § 36-14-12(c). On November 19, 1992, the commission entered an order and finding of probable cause. On February 7, 1996, approximately four years after receipt of the complaint, the commission forwarded to Lewiss a "Nature of Adjudication," scheduled for November 20, 1996. The commission heard the matter on December 13 and 17 of 1996. Finally, on February 25, 1997, the commission made its final decision.
The commission found that Lewiss served as a public official under G.L. § 36-14-4 in his capacity as Clerk for the Misquamicut Fire District, a quasi-municipal corporation, from July 12, 1988 through July 19, 1991. In their findings of fact, the commission stated that beginning in 1987 and continuing during all pertinent times, Lewiss represented Maurice J. Murphy with respect to the following: in a divorce case, in connection with preparation of a promissory note on May 12, 1989, in connection with matters in the Westerly Municipal Court, in connection with the preparation of notes and deeds on October 22, 1990, and in connection with appearances before the Westerly Zoning Board between December 17, 1990 and January 9, 1991.
The commission also found that Lewiss, at the annual meeting of the Misquamicut Fire District on July 10, 1990, participated in the discussions involving rubbish removal costs and negotiation for the renewal of the 1988 contract. The commission further noted that Lewiss continued to participate and vote in matters at the December 12, 1991 meeting, and the January 30, 1991 meeting, and in an appearance before the Westerly Town Council on January 22, 1991. At no time did Lewiss file a notice of conflict or recusal in connection with any of his appearances, participation, or votes. The commission found that the actions and votes of Lewiss affected and benefitted the financial interests of Maurice J. Murphy, Lewiss' client.
On February 11, 1992, the appellant timely filed the instant appeal.
 Standard of Review
The review of a decision of the commission by this Court is controlled by G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (Quoting Caswellv. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v.Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I.Conflicts of Interests Commission, 509 A.2d at 458. When more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rocha v. StatePublic Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997).
 The Statutory Time Limits of the Hearing
At threshold issue is whether the commission made its finding of probable cause within the 180 day statutory time limit. The commission argues that the relevant statute in effect at the time of appellant's investigation required the commission to make a preliminary determination of probable cause within 180 days. The commission believes that the statute in force at the initial stage of the investigation was bifurcated and required that the commission first make a determination as to probable cause and then conduct a formal probable cause hearing. The commission argues that they made a preliminary determination of probable cause on July 3, 1992, at which time a panel met in executive session and made a preliminary decision as to probable cause. This decision, the commission contends, was rendered within the 180 day statutory limit, and therefore, the statute was satisfied.[2]
The relevant statute, § 36-14-12(c), in effect at the time of the investigation, stated in relevant part:
 "any such investigating committee shall make its determination pursuant to subsection (d) of this section within one hundred and eighty days of receipt of the written complaint, provided the commission may, for good cause shown, grant no more than two extensions of (60) sixty days each."
Furthermore, subsection (c)(4) stated:
 (4) If the investigating committee finds after its preliminary investigation that probable cause does exist to support the allegations of the complaint, it shall prepare written findings which shall state in detail the violations complained of and the manner in which they occurred; provided, however, that, before it issues any findings, the investigating committee shall permit the respondent to appear in person or by counsel for the purpose of presenting evidence or arguments in response to the allegations against him or her. Upon the issuance of any findings the committee shall (1) submit its detailed findings to the full commission for adjudicative proceedings in accordance with section 36-14-13 of this chapter and (ii) notify the complainant and the respondent of its action." (Emphasis added.)
The commission believes that the above statute is bifurcated into two distinct parts, an ex parte preliminary hearing and a formal probable cause hearing. During the course of the commission's investigation, the state legislature enacted a revised version of the above mentioned § 36-14-12. Effective July 21, 1992, the legislature and the governor signed into law a statute which modified the investigative powers of the commission under § 36-14-12. Section 3 of Chapter 436 of the Public Laws of 1992 provided for the procedural requirements for the adjudication of cases previously pending before the commission. This section read:
 "Cases pending in which there has been a finding of probable cause prior to the effective date of this act shall be adjudicated in accordance with the procedure in effect prior to the enactment of this act by the commissioners appointed pursuant to the preceding statute. Cases under investigation and complaints filed after the effective date of this act containing allegations about events which occurred prior to the effective date of this act shall be investigated according to procedures established by this act." (Emphasis added.) P.L. 1992, ch. 436, § 3.
It is the commission' s position that the current matter falls under the older version of the statute because they believe that they issued a finding of probable cause prior to the effective date of the current legislation. The 1992 revised statute made several changes, including the language of § 36-14-12, in that the revised statute required the commission "complete its investigation" as opposed to "makes its determination" within 180 days.[3] The commission contends that "make its determination" means ex parte "preliminary determination," not a final, probable cause determination, involving a full hearing including the respondent. The commission maintains that its preliminary determination of probable cause was properly made on July 3, 1992, within 180 days of the statutory limit and before the effective date of the revised statute. However, the commission did state in its own brief that "according to statutory language, the matter fell under the new procedures, since no ultimate finding of probable cause had been made prior to that date." See Commission Brief at 40.
The appellant contends that it is irrelevant whether the old or current statute applies because the commission failed to complete its investigation or final determination of probable cause within the 180 day period required without the request for two 60 day extensions. The appellant contends that the probable cause determination occurred on November 19, 1992, at the full hearing, where the commission issued its final determination of probable cause, thus bringing the decision outside the 180 day statutory limit.
In the instant matter, determination of probable cause was complete upon the October 27, 1992, probable cause hearing in which the appellant had an opportunity to present arguments and written evidence, as required by the statute.[4] Only after this hearing could a true and final decision of probable cause be entered. See John Doe No. 1 v. Rhode Island Ethics Commission,707 A.2d 265, 265 (R.I. 1998) (only after a finding of probable cause does the commission conduct a formal hearing in order to rule on the merits of a particular complaint). As stated inMorsilli, 714 A.2d 597 (R.I. 1998), the commission should not be allowed to simply state in a conclusionary fashion that it has finished its investigation without making a determination as to whether probable cause exists to move forward beyond the investigatory stage on the charges contained in the complaint.
The Rhode Island Supreme Court in Morsilli held that the "complete its investigation" language of revised § 36-14-12 (c) was intended by the General Assembly to mean that the commission is required to make an actual finding of probable cause within the 180-day statutory time limit, subject to either one or two 60-day time extensions which may be granted upon a showing of good cause. Pivotal to the issue in the instant action is the determination of when a final order of probable cause was entered. In Morsilli, the Court stated "It is, after all, thedetermination by the commission as to whether probable cause exists to pursue the ethics complaint that both marks for certain the completion of a commission investigation and serves to apprise the subject of the investigation of the commission's findings." (Emphasis added.). Id. Pursuant to § 36-14-12(c)(4), the findings are submitted to the full commission for adjudicative proceedings. An adjudicatory action, as defined by Black's Law Dictionary, states that administrative actions are "adjudicatory" in character when they culminate in final determination affecting person or property rights." Accordingly, § 36-12-14(c), which provides that "Cases pending in which there has been a finding of probable cause prior to the effective date of this act shall be adjudicated in accordance with the procedure in effect prior to the enactment of this act by the commissioner appointed pursuant to the preceding statute," means cases in which a final finding of probable cause has been determined prior to the date of the act will be adjudicated in accordance with pre-enactment procedure. As adjudication refers to the adjudicative proceedings before the full commission after the final finding of probable cause, the 180 day time period during which the determination of probable cause must be found applies to investigations both before and after the enactment of this act.
Here, the commission, on October 27, 1992, conducted a formal probable cause hearing. Subsequent to this hearing, on November 9, 1992, the commission entered an official order and entry of probable cause entitled "Finding of Probable Cause." However, the probable cause determination is complete only after the hearing as required in § 36-14-12(c)(4). See Little v. Conflict ofInterest Comm'n, 121 R.I. 232, 237, 397 A.2d 884, 887 (1979) (noting it is a well established principle that statutory terms are given their plain and ordinary meaning unless there is a contrary intent shown on the face of the statute). It is not until the final probable cause hearing is completed that the commission can move forward with the case. The preliminary hearing of July 3, 1992, was not sufficient to satisfy the 180-day limit; the statute requires a hearing before a final determination of probable cause is to be determined. Therefore, the appellee falls outside the boundary of the 180-day limit of the statute because the commission did not complete its final determination of probable cause until November 19, 1992.
Furthermore, the record indicates that the commission,'s next hearing on the matter was held on December 13 and 17, 1996, almost four years after issuing its probable cause determination. The commission's reason for the excessive delay is that it had difficulty in forming a quorum to hear the matter and that the sheer number of cases before the commission created a backlog. The commission also states that the delay was justified due to logistical problems. Apparently, the commission was without an attorney to serve as the commission prosecutor due to changes in the statutory revisions. Also, the commission states that it did not have a facility in which to hold public hearings because their building was not handicap accessible. The commission further contends that the appellant's failure to ask for a speedy hearing caused further delay because the commission did not give priority to his matter for adjudication.
In explaining the approximately four year time passage between the determination of probable cause and the final adjudication hearing, the commission states that there is no statutory requirement requiring a speedy trial after the probable cause hearing. The commission contends absent a statutory requirement, the commission must act to adjudicate a matter within a time frame that is "reasonable and or does not unfairly prejudice substantial rights of the appellant." Vito v.Department of Environmental Management, 589 A.2d 809, 813 (R.I. 1991). The commission claims that the time frame in which the hearing was held was reasonable in light of the extenuating circumstances and that appellant was not prejudiced by the delay.
It is well settled that "[i]n administrative proceedings, respondents are not guaranteed the same constitutional right to speedy trial that applies in criminal cases." Gropp v. D.C. Bd.of Dentistry, 606 A.2d 1010 (D.C. App. 1992). However, although an administrative agency has considerable deference in establishing timetable for completing its proceedings, such discretion is not unbounded. Public Citizen Health Research Groupv. Commissioner, Food and Drug Admin, 724 F. Supp. 1013, 1019 (D.D.C 1989). "[Respondents] before administrative agencies are entitled to fair treatment, and that includes prompt disposition of their [Cases]." Waste Management Cent. Jersey, Inc. v. StateDept. of Environmental Protection and Energy, 586 A.2d 853 (N.J. 1994). Furthermore, delay may be unreasonable where there are unexplained delays which can only be attributed to "red tape," inertia, or an "unwillingness to come to grips with an issue." 2 Am. Jur.2d Administrative Law § 378 (1994).
Our Supreme Court in Vito found that the six to seven month delay of the DEM, an administrative agency, in scheduling freshwater — wetlands public hearings constituted a violation of due process rights. The Supreme Court further found that the agency scheduling problems — the difficulty in finding counsel, the difficulty in locating hearing sites, and the limited fiscal and personnel resources — were unjustified and unreasonable. Similarly, with respect to ethics commission agency investigations, our Supreme Court more recently in Morsilli
determined that our legislature intended commission investigations to come to expeditious conclusions. Morsilli
(citing Roadway Express, Inc. v. Rhode Island Commission forHuman Rights, 416 A.2d 673 (R.I. 1980)). In the instant matter, the commission failed to hear the merits of defendant's case until almost four years after the determination of probable cause. This Court finds that the delay between the final probable cause determination and the trial was unreasonable and substantially prejudiced rights of the appellant.
After a review of the entire record, this Court finds that the probable cause determination of the commission was made after the 180-day statutory time limit in violation of § 36-14-12(c). As the commission conducted a probable cause hearing out of time, the pending action must be dismissed. Furthermore, the unreasonable delay between the probable cause hearing and the trial substantially prejudiced the due process rights of the appellant. This Court need not address the other issues on appeal which are herein rendered moot.
Accordingly, appellant's appeal is granted, and the decision of the commission is reversed.
[1] Lewiss argued that he did not "knowingly and willfully" violate the code of ethics as is required by § 36-14-13(8) because he relied on the advice of both the solicitor of the fire District and the executive director of the ethics commission. Lewiss cites In Re Brancato, where the commission found that Mr. Brancato did not violate the code of ethics because he relied in good faith on the representations of the town solicitor. The commission stated that the instant matter was distinct fromBrancato. The commission stated that Lewiss, as an attorney, is charged with knowledge as to the laws of the state unlike Brancato, who was a layman. The commission further found that Lewiss' conversation with Mr. Eckstein of the R.I. Ethics Commission was inadequate, because it was made known to Lewiss that Mr. Eckstein was not in a position to render an advisory opinion binding on the commission.
[2] The complaint was filed on January 28, 1992; therefore, the 180 day limit ended on July 27, 1992.
[3] G.L. § 36-14-12 as amended by P.L. 1992 ch 436, 1 states in pertinent part:
 "Upon receipt of a written complaint alleging a violation of this chapter, the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation; provided that the commission may, for good cause shown, grant no more than two (2) extensions of sixty (60) days each."
[4] G.L. § 36-14-12 entitled "Investigative powers of the commission" states in pertinent part, "(c)(4) . . . before itissues any findings, the commission shall permit the respondentto submit a written statement and/or to appear in person or bycounsel for the purpose of presenting arguments and/orallegations against him or her. The respondent shall be entitled to examine and make copies of all evidence in the possession of the commission relating to the complaint." (Emphasis added.)